**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| JOSEPH E. ELLISON, ) | |
| ) | CASE NO.  3:14-cv-00710 |
| Plaintiff, ) | |
| ) | |
| v.  ) | MAGISTRATE JUDGE GREG WHITE |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of Social Security ) | **MEMORANDUM OPINION & ORDER** |
| ) | |
| Defendant. ) | |

Plaintiff Joseph E. Ellison ("Ellison") challenges the final decision of the Acting Commissioner of Social Security, Carolyn W. Colvin ("Commissioner"), denying his claim for a Period of Disability ("POD"), Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI") under Title(s) II and XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 416(i), 423, 1381 *et seq*.  This matter is before the Court pursuant to 42 U.S.C. § 405(g) and the consent of the parties entered under the authority of 28 U.S.C. § 636(c)(2).

For the reasons set forth below, the final decision of the Commissioner is AFFIRMED.

**I. Procedural History**

On October 26, 2010 and November 9, 2010, Ellison filed applications for POD, DIB, and SSI alleging a disability onset date of May 25, 2010.  (Tr. 35, 133, 149.)  His application

was denied both initially and upon reconsideration. Ellison timely requested an administrative hearing. On April 18, 2012, an Administrative Law Judge ("ALJ") held a hearing during which Ellison, represented by counsel, and an impartial vocational expert ("VE") testified. (Tr. 82-122.) On May 19, 2012, the ALJ found Ellison was able to perform his past relevant work and, therefore, was not disabled. (Tr. 172-180.) On July 22, 2013, the Appeals Council remanded the matter to obtain additional evidence and to issue a new decision. (Tr. 187-89.)

After remand, on November 12, 2013, an ALJ held a hearing during which Ellison, represented by counsel, and a VE testified. (Tr. 35.) On December 13, 2013, the ALJ found Ellison was able to perform a significant number of jobs in the national economy and, therefore, was not disabled. (Tr. 48-50.) The ALJ's decision became final when the Appeals Council denied further review. (Tr. 1.)

## II. Evidence

### *Personal and Vocational Evidence*

Age twenty-nine (29) at the time of his alleged onset date, Ellison is a "younger" person under social security regulations. *See* 20 C.F.R. §§ 404.1563(c) & 416.963(c). Ellison has at least a high school education and past relevant work as a receiving clerk. (Tr. 48.)

## III. Standard for Disability

In order to establish entitlement to DIB under the Act, a claimant must be insured at the time of disability and must prove an inability to engage "in substantial gainful activity by reason of any medically determinable physical or mental impairment," or combination of impairments, that can be expected to "result in death or which has lasted or can be expected to last for a

2

continuous period of not less than 12 months." 20 C.F.R. §§ 404.130, 404.315 and 404.1505(a).[1]

A claimant is entitled to a POD only if: (1) he had a disability; (2) he was insured when he became disabled; and (3) he filed while he was disabled or within twelve months of the date the disability ended. 42 U.S.C. § 416(i)(2)(E); 20 C.F.R. § 404.320.

Ellison was insured on his alleged disability onset date, May 25, 2010 and remained insured through December 31, 2011. (Tr. 38.) Therefore, in order to be entitled to POD and DIB, Ellison must establish a continuous twelve month period of disability commencing between May 25, 2010 and December 31, 2011. Any discontinuity in the twelve month period precludes an entitlement to benefits. *See Mullis v. Bowen,* 861 F.2d 991, 994 (6th Cir. 1988); *Henry v. Gardner*, 381 F. 2d 191, 195 (6th Cir. 1967).

A disabled claimant may also be entitled to receive SSI benefits. 20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs.,* 667 F.2d 524 (6th Cir. 1981). To receive SSI benefits, a claimant must meet certain income and resource limitations. 20 C.F.R. §§ 416.1100 and 416.1201.

---

[1] The entire process entails a five-step analysis as follows: First, the claimant must not be engaged in "substantial gainful activity." Second, the claimant must suffer from a "severe impairment." A "severe impairment" is one which "significantly limits ... physical or mental ability to do basic work activities." Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment, or combination of impairments, meets a required listing under 20 C.F.R. § 404, Subpt. P, App. 1, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d)(2000). Fourth, if the claimant's impairment does not prevent the performance of past relevant work, the claimant is not disabled. For the fifth and final step, even though the claimant's impairment does prevent performance of past relevant work, if other work exists in the national economy that can be performed, the claimant is not disabled. *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

## IV. Summary of Commissioner's Decision

The ALJ found Ellison established medically determinable, severe impairments, due to major depressive disorder, panic disorder with agoraphobia (post-traumatic stress disorder), and reflex sympathetic dystrophy (compartment syndrome, status-post left distal radius fracture and open reduction-internal fixation (ORIF)). (Tr. 38.) However, his impairments, either singularly or in combination, did not meet or equal one listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. (Tr. 39.) Ellison was found incapable of performing his past relevant work, but was determined to have a Residual Functional Capacity ("RFC") for a limited range of light work. (Tr. 40, 48.) The ALJ then used the Medical Vocational Guidelines ("the grid") as a framework and VE testimony to determine that Ellison was not disabled.

## V. Standard of Review

This Court's review is limited to determining whether there is substantial evidence in the record to support the ALJ's findings of fact and whether the correct legal standards were applied. *See Elam v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003) ("decision must be affirmed if the administrative law judge's findings and inferences are reasonably drawn from the record or supported by substantial evidence, even if that evidence could support a contrary decision."); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983). Substantial evidence has been defined as "[e]vidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966); *see also Richardson v. Perales*, 402 U.S. 389 (1971).

The findings of the Commissioner are not subject to reversal merely because there exists

in the record substantial evidence to support a different conclusion. *Buxton v. Halter*, 246 F.3d 762, 772-3 (6th Cir. 2001) (*citing Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)); *see also Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999) ("Even if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached. *See Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997).") This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference. *Mullen*, 800 F.2d at 545 (*citing Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

In addition to considering whether the Commissioner's decision was supported by substantial evidence, the Court must determine whether proper legal standards were applied. Failure of the Commissioner to apply the correct legal standards as promulgated by the regulations is grounds for reversal. *See, e.g.,White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009); *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006) ("Even if supported by substantial evidence, however, a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.")

Finally, a district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (*quoting Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir.1996); *accord Shrader v. Astrue*, 2012 WL 5383120 (E.D. Mich. Nov. 1, 2012) ("If relevant evidence is not mentioned, the Court cannot determine if it was discounted or merely overlooked.");

*McHugh v. Astrue*, 2011 WL 6130824 (S.D. Ohio Nov. 15, 2011); *Gilliam v. Astrue*, 2010 WL 2837260 (E.D. Tenn. July 19, 2010); *Hook v. Astrue*, 2010 WL 2929562 (N.D. Ohio July 9, 2010).

## VI. Analysis

### *Substantial Evidence and the RFC*

In his first assignment of error, Ellison argues that the ALJ erred in determining the RFC. (ECF No. 14 at 15-20.)  Specifically, Ellison avers that the RFC is not supported by substantial evidence, but "[r]ather, substantial evidence supports more significant limitations including no use of the left upper extremity, only occasional reaching with the right upper extremity, no crawling and being off task due to concentration problems." *Id*. at 15.

The ALJ engaged in an exhaustive seven-page discussion of the medical evidence as it related to the RFC.  (Tr. 41-48.)  The ALJ discussed the evidence supporting the RFC as to Ellison's limitations in the use of his upper extremities (Tr. 42-44, 47), and the evidence supporting Ellison's limitations stemming from psychological impairments.  (Tr. 44-47.)  The ALJ also explained why he considered some evidence and opinions more reliable than others.[2] (Tr. 41-48.)  The substantial evidence standard "presupposes that there is a zone of choice within which the [ALJ] can go either way, without interference by the courts.  An administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision." *Williamson v. Apfel*, 1998 U.S. App. LEXIS 30010 at *13 (6th Cir. 1998),

---

[2] Notably, the ALJ went to great lengths to explain the weight he accorded to the opinion of consultative medical examiner Kevin Smith, M.D.  (Tr. 43-44).  The ALJ further explained why he was according great weight to Ellison's treating psychologists, while assigning little weight to the opinion of Glenn Swimmer, Ph. D.  (Tr. 45-46.)

*quoting Mullen*, 800 F.2d at 545; *Isaac v. Sec'y of Health & Human Servs.*, 110 F.3d 64, 1997 U.S. App. LEXIS 11126 (6th Cir. 1997) ("This argument obviously ignores the standard of review by which [courts] are bound. If substantial evidence supports the ALJ's findings, [a court] must affirm the resulting conclusion, even if [the court] would have decided the matter differently in the first instance.")

Here, Ellison's brief merely points to other pieces of evidence he believes the ALJ should have weighed more heavily or offers a different interpretation of the evidence of record than the ALJ. However, simply because substantial evidence *could* have supported a more restrictive RFC does not provide a basis for remand, as it is immaterial whether there is evidence of record capable of supporting the opposite conclusion. Rather, the question is whether there is a dearth of substantial evidence capable of supporting the ALJ's RFC findings. Ellison's argument amounts to an invitation for this Court to conduct an improper *de novo* review of the evidence, to re-weigh the various medical records and opinion evidence, and to credit his interpretation of the evidence over that of the ALJ. However, a reviewing court, like this one, does not conduct a *de novo* review, resolve conflicts in the evidence, or decide questions of credibility. *Nelson v. Comm'r of Soc. Sec.*, 195 F. App'x 462, 468 (6th Cir. 2006); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984); *Rogers v. Astrue*, 2012 U.S. Dist. LEXIS 24712, 2012 WL 639473 (E.D. Ky. Feb. 27, 2012).

As such, Ellison's first assignment of error is without merit.

### *Listing § 12.04*

In his second assignment of error, Ellison asserts that the ALJ erred at Step Three of the sequential evaluation by finding that he did not meet or medically equal Listing § 12.04. (ECF

No. 14 at 20-23.) At step three, the burden of proof for establishing that an impairment meets or equals the requirements of a listing rests with the claimant. *See Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001). To meet a listed impairment, a claimant must satisfy all of the criteria in the listing. *See Roby v. Comm'r of Soc. Sec.*, 48 Fed. App'x. 532, 536 (6th Cir. 2002) (*citing Hale v. Sec'y of Health & Human Servs.*, 816 F.2d 1078, 1083 (6th Cir. 1987)).

> Listing § 12.04 describes affective disorders and provides, in relevant part:
>
> Characterized by a disturbance of mood, accompanied by a full or partial manic or depressive syndrome. Mood refers to a prolonged emotion that colors the whole psychic life; it generally involves either depression or elation.
>
> The required level of severity for these disorders is met when the requirements in both A and B are satisfied, or when the requirements in C are satisfied.
>
> A. Medically documented persistence, either continuous or intermittent, of one of the following:
>
> 1. Depressive syndrome characterized by at least four of the following:
>
>   a. Anhedonia or pervasive loss of interest in almost all activities; or
>
>   b. Appetite disturbance with change in weight; or
>
>   c. Sleep disturbance; or
>
>   d. Psychomotor agitation or retardation; or
>
>   e. Decreased energy; or
>
>   f. Feelings of guilt or worthlessness; or
>
>   g. Difficulty concentrating or thinking; or
>
>   h. Thoughts of suicide; or
>
>   i. Hallucinations, delusions, or paranoid thinking ...
>
> * * *
>
> AND

> B. Resulting in at least two of the following:
>
> 1. Marked restriction of activities of daily living; or
>
> 2. Marked difficulties in maintaining social functioning; or
>
> 3. Marked difficulties in maintaining concentration, persistence, or pace; or
>
> 4. Repeated episodes of decompensation, each of extended duration[.]
>
> OR
>
> C. Medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:
>
> 1. Repeated episodes of decompensation, each of extended duration; or
>
> 2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or
>
> 3. Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 12.04.

Here, the ALJ found that Ellison "does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (Tr. 39.) The ALJ's discussion specifically addressed details as to whether Ellison's mental impairments satisfied Listing § 12.04 (affective disorders). (Tr. 39-40.) Ellison concedes that to be found to meet or equal Listing § 12.04, he must satisfy both the A and B criteria. (ECF No. 14 at 20.) Because the ALJ found that the B criteria was not satisfied, a discussion of the A criteria is immaterial. With respect to the former, the ALJ found as follows:

9

In making this finding, the undersigned has considered whether the "paragraph B" criteria are satisfied. To satisfy the "paragraph B" criteria, the mental impairments must result in at least two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration. A marked limitation means more than moderate but less than extreme. Repeated episodes of decompensation, each of extended duration, means three episodes within 1 year, or an average of once every 4 months, each lasting for at least 2 weeks.

In activities of daily living, the claimant has a mild restriction. Activities of daily living include adaptive activities such as cleaning, shopping, cooking, taking public transportation, paying bills, maintaining a residence, caring appropriately for grooming and hygiene, using telephones and directories, and using a post office. Mild limitations were found because the claimant lives alone and various examiners have observed that his grooming and hygiene were appropriate (Exhibits lE/2, 8F/2, 13F/9, 11, 15F/ 12, 16F/5 and 19F/ 14). More importantly, the vast majority of the claimant's alleged difficulties in this area appear to be premised on physical complaints of pain and limited use of his left arm, not his depression or anxiety (Exhibit 15F/25). For example, the claimant reported that he lost the ability to drive, cook and clean since he lost the ability to use his left hand (Exhibit 13F/9-10). Therefore, the evidence supports a finding that the claimant has no more than a mild limitation in daily activities due to his mental impairments.

In social functioning, the claimant has moderate difficulties. Social functioning refers to an individual's capacity to interact independently, appropriately, effectively, and on a sustained basis with other individuals. Due to the claimant's depression and panic attacks, he experiences difficulty engaging in interaction with others (Exhibits 13F/9-12). Nevertheless , as chronicled in his treatment history and per his reports, the claimant has been able to attend parties and participate in poker games (Exhibits 9F/1, 4 and 13F/2). He also was able to continue to coach baseball four times per week, implying an ability to engage and interact socially with others on a consistent basis (Exhibits 9F/5 and 12F/2). Moreover , various examiners have noted that he is "cooperative," "happy" and "pleasant" (Exhibits lOF/22, 34, 15F/8, 12-13, 17F/2, 18F/2 and 19F/14). Overall, the record supports no more than a moderate limitation in social functioning.

With regard to concentration, persistence or pace, the claimant has moderate difficulties. Concentration, persistence, or pace refers to the ability to sustain focused attention and concentration sufficiently long to permit the timely and appropriate completion of tasks commonly found in work settings. Limitations in concentration, persistence, or pace are best observed in work settings, but may

10

>also be reflected by limitations in other settings. Moderate limitations were found because treatment records reflect that the claimant has poor concentration and memory (Exhibits 9F/3 and 13F/10). However, the claimant has consistently reported that he likes to read and mentioned numerous times in the record that he watches sports on television, which suggests a greater ability to concentrate and focus then what the claimant alleged (Exhibits 9F/4 and 13F/2, 9, 7, 12). Further, treatment records reflect that the claimant is usually able to stay focused on the topic at hand during visits (Exhibits 13F/2, 5, 7, 14F/2, 15F/8 and 19F/ 15). Therefore, the evidence supports a finding that the claimant has no more than a moderate limitation in concentration, persistence and pace.
>
>As for episodes of decompensation, the claimant has experienced no episodes of decompensation, which have been of extended duration.
>
>Because the claimant's mental impairments do not cause at least two "marked" limitations or one "marked" limitation and "repeated" episodes of decompensation, each of extended duration, the "paragraph B" criteria are not satisfied.

(Tr. 39-40.)

Ellison's second assignment of error suffers from the same deficiencies as the first. Ellison simply points to evidence[3] which he believes could support a finding that he satisfied the B criteria of Listing § 12.04 and offers his own interpretation of the evidence upon which the ALJ relied. (ECF No. 14 at 22-23.). The ALJ explained his findings and identified the evidence which supported them. For the reasons explained above, an ALJ's finding, even at Step Three, is not shown to be unsupported by substantial evidence simply by pointing to other evidence in the record to rebut the ALJ's finding or by offering a contrary interpretation.

As such, Ellison's second assignment of error is also without merit.

---

[3] It bears noting that Ellison also points to evidence that was not before the ALJ, the same evidence addressed below which he believes furnishes a basis for a remand pursuant to sentence six of 42 U.S.C. § 405(g).

*Post-Hearing Evidence*

In his final assignment of error, Ellison contends that remand is proper so that medical evidence obtained after December 13, 2013, the date of the ALJ's decision, may be considered. (ECF No. 14 at 24.) Ellison points to the following evidence: (1) a Mental Functional Capacity Assessment from Mary Goebel-Komala, Ph. D., dated January 9, 2014; and, (2) examination records from Abdulazim Mustapha, M.D., dated December 12, 2013. (ECF No. 14 at 24.)

A sentence six remand is appropriate only where the evidence presented is new and material, and good cause existed for not presenting the evidence in the prior proceeding. 42 U.S.C. § 405(g). Evidence is new only if it was not in existence or unavailable during the administrative proceeding. *Ferguson v. Comm'r of Soc. Sec.*, 628 F.3d 269, 276 (6th Cir. 2010); *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Evidence is "material" for purposes of sentence six remand if it is time-relevant, *i.e.*, relates to the period on or before the date the ALJ rendered his decision. *Id*; *see, e.g., Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 478 (6th Cir. 2003). Also, evidence is "material" only if there is a reasonable probability that the ALJ would have reached a different conclusion if the evidence had been considered. *Ferguson*, 628 F.3d at 276; *Foster*, 279 F.3d at 358. Finally, "good cause" exists where the failure to present the evidence during the administrative proceeding was reasonably justified. *Ferguson*, 628 F.3d at 276; Foster, 279 F.3d at 357. The Sixth Circuit has observed that it "takes a 'harder line' on the 'good cause' test," explaining that a claimant "must give a valid reason for failing to obtain relevant examinations prior to the hearing." *Cotton*, 2 F.3d at 695. In other words, good cause exists where the failure to present the evidence during the administrative proceeding was reasonably justified. *Foster*, 279 F.3d at 357.

12

The Commissioner asserts that Ellison's Brief on the Merits fails to set forth any "good cause" for failing to obtain the new evidence earlier. (ECF No. 17 at 19-20.) The Court agrees. There is nothing in Ellison's brief, one-page argument even remotely justifying why Ellison did not obtain the examinations or evaluations prior to the hearing. (ECF No. 14 at 24.) In his reply, for the first time, Ellison argues that the evaluation performed by Dr. Goebel-Komala was scheduled by the Ohio Department of Job and Family Services ("ODJFS"). (ECF No. 19 at 7-8.) As to the treatment record from of Dr. Mustapha from December 12, 2013, Ellison merely states that said record was not in existence at the time of the hearing. *Id*. at 8. As explained by the Sixth Circuit Court of Appeals, "timing alone does not satisfy the 'good cause' requirement." *Courter v. Comm'r of Soc. Sec.*, 479 Fed. App'x. 713, 725 (6th Cir. 2012) (*citing Oliver v. Sec'y of Health & Human Servs.*, 804 F.2d 964, 966 (6th Cir. 1986)). The *Courter* court found that a claimant was not entitled to a sentence six remand where the claimant "fails to provide a reasoned explanation for or detail the obstacles that hindered her from seeking the evaluations sooner." *Id*. (citations omitted). While Ellison states that the ODJFS scheduled the consultative examination, this assertion is neither confirmed nor refuted by the record. (Tr. 11.) However, even assuming for the sake of argument that the consultative examination performed by Dr. Goebel-Kumala was scheduled by someone other than Ellison or his counsel, Ellison could have obtained a psychological evaluation from another source if he believed one was important to his claim, as "the claimant has the ultimate burden of producing sufficient evidence to show the existence of a disability." *Allison v. Apfel*, 2000 U.S. App. LEXIS 22689, 2000 WL 1276950 at * 5 (6th Cir. Aug. 30, 2000); *Landsaw v. Sec'y. of Health & Human Servs.*, 803 F.2d 211, 214 (6th Cir. 1986) ("The burden of providing a complete record, defined as evidence complete and

13

detailed enough to enable the Secretary to make a disability determination, rests with the claimant.")  The same is true for the treatment records from Dr. Mustapha, which Ellison believes are significant in documenting limitations with his right hand.  Ellison could have requested medical source statements prior to the hearing.

In social security cases, medical treatment of claimants is often ongoing, even after a hearing decision.  Remanding cases every time there is a new, potentially material medical record would undermine finality, which is undoubtedly the rationale behind the "good cause" requirement.  Furthermore, it bears noting that subsequent to the hearing, the ALJ requested additional records.  (Tr. 35.)  Ellison's counsel submitted a response on December 4, 2013, "and did not request any additional action."  (Tr. 36.)  By this point in time, it is difficult to believe that the examinations with Dr. Goebel-Komala and Dr. Mustapha were not yet scheduled.  Ellison's failure to request that the ALJ await this evidence does not support a claim of good cause.  Because Ellison cannot show good cause for his failure to obtain evaluations and/or examinations prior to the ALJ's decision, he is not entitled to remand under sentence six of § 405(g).

## VII.  Decision

For the foregoing reasons, the Court finds the decision of the Commissioner supported by substantial evidence.  Accordingly, the decision is AFFIRMED and judgment is entered in favor of the defendant.

IT IS SO ORDERED.

/s/ Greg White
U.S. Magistrate Judge

Date: February 27, 2015